May it please the Court, Thomas Peterson for Hewlett-Packard. This case involves the Statute of Limitations issue decided on the pleadings by Judge Ware with respect to Hewlett-Packard's separate lawsuit seeking recovery for breach of the implied covenant of good faith and fair dealing, tortious breach of that covenant under California law. And essentially there are two principal issues, I think, areas for the Court to consider with respect to why Judge Ware airs in terminating this claim on the pleadings. The first has to do with when did the claim accrue? Well, H.P. had a judgment from the district court in June of 2000 declaring that Ace had a duty to defend. What stopped H.P. from bringing the bad faith claim at that point? Well, Your Honor, if you measure the claim from that point, which I'm perfectly willing to suggest would be proper, it would have been timely filed because it was filed within two years at that point. So, indeed, if you look at the pleadings in this case, particularly at excerpt of record paragraph 93, we've consistently alleged in the second amended complaint that the problem with Judge Ware's decision was his focus on April 5th. We just need to get 12 more days. That was April 5th of 2000. We can get more than 12 days, Your Honor, if we focus on Judge Spencer Williams' decision following reconsideration determining that there was coverage. And I think you're right. That could be viewed as an exception, perhaps, to the requirement that the policy is triggered when there is a denial of coverage. I'm completely confused. You answered Judge Callahan by saying it was within two years, and now you're telling me you need 12 more days. It was two years and 12 days from April 5th. No, no, no, no. No, Your Honor. The complaint was filed in April of 2002. If we start the running of the time period from Judge Williams' decision in June of 2000, we're within 12 more days. You've gotten to Judge Williams. You now have to add Judge Williams. But you were – previously you were saying we've got two years, more timely, without Judge Williams, but you're not. Yes, Your Honor. But that goes back then to our principal argument, which would be that without a denial of coverage, the accrual of the cause of action did not begin. And what I was suggesting in response to Judge Callahan's question is that I could see an exception to the requirement. But you need an exception. I don't think I do, but I think that's an alternative way of thinking about why this claim was timely filed. In other words, I think the basic rule of California law, as it was articulated in the Lambert case, is that you need a clear denial by the insurance company in order to cause the cause of action to start to accrue. But Lambert involved a several remedies rule, correct? And that's what the factors were applied to here. On April 5th, it was done. You won. All of that. So we would have to extend Lambert to give you tolling, I think. No, no, no, Your Honor. If April 5th is the triggering date, you don't make it, right? That's correct, Your Honor. Okay. So, you know, you started out saying something that sounded very different from that. I apologize, Your Honor. Judge Callahan asked you a straight question, and you said, oh, no, we did it within two years of that. But she was asking me about Judge Williams' decision in June of 2000. Perhaps let me – Maybe I misheard. Go ahead. Let me try to clarify. So there was never a written denial of coverage that was sent to us that Lambert – But it, in fact, didn't pay. You know, you went through your whole lawsuit, and there was no payment made. It would have been pretty clear that they weren't paying. No one was sitting at counsel table from Ace, right? That's true, Your Honor. But – What was your first clue that they weren't going to defend? California law says that they have to tell us they're not going to defend, that that is their obligation. Okay. We understand you've got an argument like that. Yes. But let's just say we don't buy that. Okay. You know, if you buy that, then you win, and that's it. All right. So let's just say we don't buy that. All right. So then – So we figure that by the time they come back and you finish your trial, you knew or should have known, well, one note is that I'm going to pay. So then you get an April 5th judgment, right? No, we don't get a judgment on April 5th. On April 5th, the underlying action ends. That is, the Newcote case ends. With respect to – Why is that a judgment? That is not a – that is an end of the underlying case, which occurred in this case when the appeal was – How is that different from saying you got a judgment? Isn't that how cases end? You get a judgment in your favor? Well, actually, it was a dismissed appeal, which under California law would have been relevant to the tolling that takes place after a claim has accrued. Now, if the Court is disagreeing with our position that there was a tolling because there had never been a denial of coverage – I said forget about that argument. I understand that. If you win on that argument, then you don't need to stand there. You've won, sat down, and you – okay. So just put that one out of your mind. I understand that. Okay. Because you're going to keep confusing things if you keep coming back to it. Okay. It's difficult enough to follow these things. Okay. So the judgment that the summary adjudication that determined our right to coverage was issued in June. It was – there was a series of orders. There was an initial decision – No, we're talking about the underlying action. Now we're talking about the coverage action. The underlying action – No, but we were talking about the underlying action. Correct. They get a judgment on April 5th. That's right. And so – That was like pulling teeth. That was like pulling teeth. All right. I'm sorry, Your Honor. The underlying coverage case – So why isn't the point that you get a judgment in the underlying action, the triggering And that's the end of the matter. You come from there for two years, you're 12 days short, and you lose. It's only relevant for purposes of tolling, not for purposes of triggering the underlying – the accrual of the claim. And I would urge the Court that for purposes – if you're not prepared to accept the accrual issue, then we turn to the tolling issue where the Court should adhere to the California case law, which has said that when there has not been a denial of coverage, that it is appropriate to apply equitable tolling principles. And here, those principles should have been applied by Judge Ware. He didn't apply them because he decided that it was an estoppel-based theory that he should use, relying on some Federal case law, when we suggest he should have relied on the Ninth Circuit's decision in the Daviton case, which articulates the elements of tolling, equitable tolling, and has no estoppel requirement. The key point here, I think, is to focus on how the California Supreme Court has extended the equitable tolling doctrine to deal with situations where there has been a failure of an insurance company to deny coverage. And the best example of that is the prudential LMI case where the California Supreme Court said that even though the claim had accrued, that equitable tolling would apply to extend the time to sue. And that case does not involve the separate remedies doctrine, nor, Your Honor, does the Lampert case. Those cases are not a situation where tolling was based on the fact that a prior lawsuit claiming coverage had been filed. They were based on the principle that there was adequate notice given to the insurance company, and therefore, there was no basis by which the Court should have not suspended the running of the limitations period. You have about a minute left. Do you want to save that? Perhaps I should save that. Thank you. Okay. We'll hear from the other side. Good morning, Your Honors. I'm back. Good to see you again. This appeal, Your Honor, is controlled by a very clear, subtle principle of California law, and that is that a limitations period commences when the claim accrues, and not before. There's a simple identity between the accrual of a plaintiff's claim and the commencement of the limitations period. An insured's liability claim accrues when an insurer refuses to defend. There is no case. There's no case. No, but it seems like, you know, I have to call you on that. Isn't it disingenuous to argue that ACE unequivocally denied coverage in its pleadings and briefing in the coverage action when, in fact, it continually requested additional information to determine the existence and scope of the coverage obligations? Two answers, Your Honor. First, we have two submissions. Our primary submission is that there's no requirement as a matter of California law that says an insurer has to deny a defense in writing before the insurer is allowed to sue the insurer. That's how a claim accrues. And there's no principle. You won't find a case anywhere that bars a plaintiff from suing because they haven't received a letter that says our defense is denied. Sorry? It'd be a new trick. Yeah. It would be extraordinary. A claim accrues when the defense isn't offered. It wasn't forthcoming. And the one thing everybody knew all along was that ACE was not defending the case. So it's a completely secondary point that, in fact, there was a writing denial, which was the – when they sued and said, you owe us a duty to defend, the answer, the paragraph answering said, no, we don't. That's a denial. That's a clear indication that we were not going to defend. And it certainly became true by the end of the underlying litigation that we had not provided a defense.  When did that happen? I'm sorry? And when did that happen, the coverage action? And that was our answer to the coverage action, which was in March of 19 – March of 1999. So it was a couple months, a month or so after the underlying coverage action was filed. But, again, that's our secondary submission. Our primary submission is no requirement. And your judgment in the underlying action was when? While the final terminating event was April 5th of 2000. 2000. And under California law – So in your view, the denial had happened before that when, in the underlying action, you filed an answer saying, no, we don't. Yes. But also, again, our primary submission is you don't have to have that writing. The fact that we weren't providing the defense is – was sufficient to allow HP to sue us, as they, in fact, did in the coverage action. There's no rule that says a plaintiff has to await a written denial before a claim accruals. What the rule says under Lambert is that the claim accrues when you just don't defend, but your limitations period is told until the underlying action is commenced. Because you don't want the insurer to have to litigate on two fronts. A perfectly fair rule. All right? But when the underlying litigation is over, as it was on April 5th, 2000, that policy interest disappears and the limitations period then recommences. A claim is already accrued and the period has already commenced. It's just told until the underlying litigation is terminated. At that point, there's no basis for the insurer not filing a lawsuit, and so they have two years going forward at that point to file the lawsuit, and they didn't. There is no – So when was it – the duty to defend was determined when? The duty to defend ruling – I believe the ruling was June of 2000. 2000. Yeah. And that's immaterial, we would submit, Your Honor, to the question whether they had a claim for bad faith that had already accrued. That is, you know, another fact that would be used by them in arguing that you denied our duty to defend. But they had a valid – they had a basis for suing at that point. They could have amended their complaint, that particular complaint, to add that faith, right? At that point, at any point along the way, one imagines they could have, but they never did. The fact they filed a separate action, and because they filed a separate action, their separate action, you know, was filed out of time. Well, one could assume they were emboldened by winning. That's true, but that doesn't excuse missing the limitations period. That's the whole problem here. They missed it by 12 days. So under the basic Lambert tolling rule – the Lambert tolling rule is not controversial, it's not disputed, it's not ambiguous, it's not confusing. At the end of the termination of litigation, the limitations period – underlying litigation, the limitations period effectively recommences. The only basis, then, that I think they would conceivably have, even in theory under California law, for extending the tolling – extending the limitations period beyond April 5th of 2002 would be if there was an equitable estoppel kind of theory. And that's simply not alleged or really at issue here. There's no basis for any finding that induced HP misled them into not filing a timely complaint. And so there's no equitable estoppel basis. Counsel correctly says that there are examples of equitable tolling that aren't in the multiple remedies situation. And he gives you two of them, and they're incredibly instructive. One is in the first-party liability case, the LMI case, where it's told it accrues when the insured suffers a loss. This is third-party liability, right? And in third-party liability, there's already an answer. And that's Lambert. And counsel gave Lambert as an example. That is a situation where California courts have recognized a species of equitable tolling. And the rule there is very clear, and it decides – is dispositive of this case. Tolling goes only until the end of the underlying litigation, at which point there's no reason the insured would be fighting on two fronts and, therefore, has already accrued claim against the insurer and can file that action. And when they do, it's still out of time. The case is barred. Thank you. You have about a minute and a half left. The requirement of a denial in writing is set out in the regulations issued by the California Insurance Commissioner, which we know. Why isn't the answer in the coverage action enough? You sued, sanctioned, and they said, no, we don't. The answer doesn't unambiguously deny coverage. Look, for example, at paragraph 43, which responds to paragraph 43 of our complaint, which says, Cigna admits that HP has not provided the information requested and cannot determine whether any obligations are owed under the policies. In addition, in that same document, they affirmatively alleged in their counterclaim that they needed additional information in order to decide the question of coverage. Their position in the answer was that the face of the complaint didn't give them enough information to determine coverage. They had to look to extrinsic evidence, and they hadn't been provided it, and, therefore, they couldn't make a decision. So it's not an unequivocal denial, which is what California law requires. The Alberti case specifically says, relying on the prudential LMI case, that it's extremely important that we have a clear and bright line for this sort of thing, and that a written statement is necessary in order to accomplish that objective. We did try to add the bad faith allegations in this case, Judge Callahan. We weren't able to do that, and with respect to the failure to add them back at the beginning, California law says that in a declaratory relief context, you don't have to include your coercive claims. That's Code of Civil Procedures, Section 1062. And I see my time is up. Thank you. Thank you. The case is highly responsible. We are adjourned.
judges: Kozinski, Noonan, Callahan